Sherman LOWE

v.

Charles SMITH, City Sheriff and A. E.
Slayton, Jr., Superintendent of the
Virginia State Penitentiary.

Civ. A. No. 306–73–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 20, 1973.

**1386**

---

Sherman Lowe, pro. se.

Wm. A. Carter, III, Asst. Atty. Gen., Richmond, Va., William H. Fuller, III, Danville, Va. (Atty. for City of Danville), for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, an inmate at the Virginia State Penitentiary in Richmond, Virginia, brings this action against Charles Smith, Sheriff for the City of Danville, Virginia, and A. E. Slayton, Jr., Superintendent of the Virginia State Penitentiary. Plaintiff claims that the defendants' actions in transferring him from the custody of the Danville City Sheriff to the State Penitentiary, where he is now confined, have violated his constitutional rights in several respects. Plaintiff seeks a remedial order returning him to the Danville City Jail, pending his appeal from his criminal conviction, and monetary damages for the injuries he has allegedly suffered as a result of the actions complained of.

Plaintiff has alleged jurisdiction on the basis of 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The parties are now before the Court pursuant to defendants' motion to dismiss the matter and the matter is now ready for disposition.

Basically, the facts of this case are the following. On December 1, 1972, plaintiff was tried and convicted by a Corporation Court jury for the City of Danville, Virginia, of grand larceny and sentenced to five years of imprisonment. At the conclusion of his trial, plaintiff indicated his desire to appeal the jury decision and requested that he be allowed to remain in the Danville City Jail pending his appeal. The trial judge, expressing some doubt as to whether Virginia law even permitted his ordering a prisoner transferred to the State Penitentiary while his appeal was pending, indicated to plaintiff that his request would be allowed.

On February, 5, 1973, because of overcrowding at the Danville City Jail, where he had been incarcerated since his conviction, plaintiff was transferred to the Danville City Prison Farm.

On February 15, 1973, while still imprisoned at the Danville City Prison Farm, illness caused the plaintiff to be hospitalized in the Danville Memorial Hospital. It became apparent at that time that plaintiff would require extensive medical treatment for which city officials were not budgeted to pay in the case of prisoners such as plaintiff, who had been sentenced to the State Penitentiary. Accordingly, with the verbal approval of the sentencing judge, plaintiff was transferred to the custody of state prison officials, whose department was budgeted to cover such expenses, and physically removed to the State Penitentiary on February 16, 1973. There, plaintiff was given further medical treatment. He was ultimately placed in the Medical College of Virginia Hospital on February 20, 1973, operated upon on March 5, 1973, and returned to the State Penitentiary on March 9, 1973. Since that time plaintiff has been returned to the hospital on at least two occasions, from March 23, 1973 to March 30, 1973, and from June 13, 1973 to July 5, 1973.

As of July 10, 1973, plaintiff's medical treatment was still not complete.

Since transferring plaintiff to the State Penitentiary, defendant Smith requested an opinion from the Attorney General of Virginia as to whether convicted felons should be sent to the State Penitentiary upon conviction or allowed to remain in the locality pending the outcome of their appeals. On April 10, 1973, the Attorney General responded with an opinion stating in part that convicted felons should be sent to the penitentiary "as soon as space is available." No exception was made in that opinion for prisoners whose appeals were still pending.

The gravamen of plaintiff's complaint appears to be:

1. That both his transfer from the Danville City Jail to the Danville City Prison Farm on February 5, 1973 and his transfer to the custody of state prison officials at the State Penitentiary on February 16, 1973 were contrary to the judicial decree imposing sentence upon him and therefore deprived him of due process of law; and

2. That his transfer from the custody of the local sheriff to the custody of state prison officials at the State Penitentiary was contrary to state law and, therefore, denied him equal protection of law; and

3. That his physical transfer from the Danville Memorial Hospital to the State Penitentiary directly interfered with the medical treatment he had been receiving at the Danville Memorial Hospital and therefore inflicted cruel and unusual treatment upon him.[1]

■■ The essence of plaintiff's first two claims is a challenge to the jurisdiction of officials other than the Danville City Sheriff over his custody. He objects, therein, to the fact of his present confinement at the State Penitentiary, as opposed to the Danville City Jail. The relief which plaintiff requests is a release from the custody of state prison officials to the custody of the Danville City Sheriff at the Danville City Jail. Accordingly, it is the conclusion of the Court that these claims should appropriately be raised in a petition for habeas corpus under 28 U.S.C. § 2254. See Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Viewed as such, the complaint, with respect to these claims, must be dismissed without prejudice, as it does not appear that plaintiff has exhausted his state remedies as required by 28 U.S.C. § 2254(b).

Moreover, even assuming plaintiff's claims are cognizable under 42 U.S.C. § 1983, the Court is of the opinion that abstention would be the appropriate course in this case.

■■ The question of where a convicted state prisoner should be confined is basically a question of state law. It may be that a violation of state law by officials charged with its administration would, under some circumstances also give rise to a claim of deprivation of due process and equal protection. However, where the resolution of ambiguities in state law might obviate the need to proceed to such constitutional issues, a federal district court should defer to the judgment of the appropriate state court with respect to those issues, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ In this particular case there are several questions of state law which would have to be resolved before proceeding to plaintiff's federal claims.

First, there is the question of whether state law requires that a prisoner not be

---

1. Since filing his original complaint plaintiff has sent to this Court numerous correspondence voicing complaints about several matters related to the conditions of his confinement at the State Penitentiary and the State Farm. As these claims do not relate directly to the matters raised in plaintiff's original complaint, they will not be passed upon at this time. Plaintiff may, if he wishes, submit another complaint setting out these new claims.

transferred to the State Penitentiary pending his criminal appeal. If Virginia law does not so provide, plaintiff can hardly complain that he is being denied equal enforcement of a non-existent state law. On the other hand, if Virginia law does so provide, there is no reason to believe that a state court to which the issue would be presented would not enforce that right.

Second, there is the question of whether the trial judge's acquiescence in plaintiff's request that he be retained in the City Jail pending his appeal was officially part of the sentencing decree.

Third, there is the question of whether a trial judge has authority to include such a stipulation in a sentencing decree. Assuming that any of these questions be answered in the negative, plaintiff could hardly complain that he was denied due process with respect to a right that he never had. On the other hand, assuming that the questions would be answered in the affirmative, there is no reason to believe that a state court to which these questions would be appropriately addressed would not enforce plaintiff's rights.

Accordingly, defendants' motion will be granted with respect to these claims and plaintiff's first two claims will be dismissed without prejudice.

■ With respect to plaintiff's third claim of medical mistreatment, defendant's motion will be treated as a motion for summary judgment under Rule 56, F.R.Civ.P., in view of the Court's reliance on supporting affidavits submitted by the defendants in disposing of this motion. Rule 12(b), F.R.C.P.

Defendants do not deny plaintiff's allegation that he was transferred to the State Penitentiary on the day he was to be operated on at the Danville Memorial Hospital and at a time when he was being prepared for that operation. Defendant Smith's answer and supporting affidavits suggest that transfer at that time was necessary because of governmental budgetary problems in covering the costs of plaintiff's medical treatment. More importantly, however, Dr. Duruman's affidavit shows that prior medical approval had been given for the transfer at that time. In addition, the affidavits of the deputy sheriffs who transported plaintiff to the State Penitentiary attest to the fact that the trip was uneventful and that plaintiff neither appeared to be in any pain nor complained of any physical discomfort. Plaintiff has not attempted to directly refute any of these statements with offers of proof to the contrary.

Finally, plaintiff does not allege that his medical treatment was discontinued upon his arrival at the State Penitentiary. In fact, plaintiff's own statements submitted to this Court attest to the following facts: that he was admitted to the Medical College of Virginia Hospital within four days of his transfer to the State Penitentiary; that he was operated on before being returned to the penitentiary; and that he has been returned to the hospital on at least two occasions since his first operation, for further treatment.

■ This Court cannot conclude, under these circumstances, that the slight interruption of plaintiff's medical treatment caused by his transfer to the state penitentiary has inflicted upon him cruel and unusual treatment.

Therefore, pursuant to Rule 56, defendant's motion will be granted and judgment will be entered for the defendants with respect to plaintiff's third claim.

An appropriate order shall issue.